UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FELDKAMP ENTERPRISES, INC.,
*et al.*,

        **Plaintiffs,**                      Case No. 1:23-cv-407

    v.                                      JUDGE DOUGLAS R. COLE

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

        **Defendant.**

## OPINION AND ORDER

      This insurance dispute, as teed up in the motions currently before the Court, does not turn on many details: (1) the timing of the occurrence triggering Defendant Massachusetts Mutual Life Insurance Company's (MMLI) obligation to pay out under the policy issued to Plaintiff Chadd Feldkamp for the benefit of Plaintiff Feldkamp Enterprises, Inc., (FEI); (2) the timing of MMLI's dissemination of a policy rider Feldkamp signed; and (3) whether Plaintiffs ever complied with the policy's notice and proof-of-claim provisions, which are conditions precedent to their entitlement to benefits. Allegations about the last factual detail, though, are missing from the Complaint. That renders Plaintiffs' breach-of-contract claim facially defective, which in turn renders the other contract-related claims moot. So the Court must dismiss the action. But because Plaintiffs could (in theory) amend the Complaint to add such information, dismissal will be without prejudice. Therefore, without needing to address any other dispute, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Judgment on the Pleadings (Doc. 9) and **DISMISSES**

Plaintiffs' Complaint (Doc. 1) **WITHOUT PREJUDICE**. And because all the claims raised are subject to dismissal, the Court therefore **DENIES AS MOOT** Plaintiffs' Motion for Partial Summary Judgment (Doc. 10).

## BACKGROUND

Before the Court recites the relevant background of this case, a preliminary note is in order. Were these motions directed solely at the pleadings, the Court would include its standard warning: that while it draws the factual background from the Complaint and any documents properly incorporated into the pleadings (because they are integral to the claims raised), those details are nothing more than allegations at this stage of the suit. *E.g.*, *Lion Fed. Credit Union v. Worldpay, LLC*, No. 1:24-cv-163, 2024 WL 1704551, at *1 nn.1–2 (S.D. Ohio Apr. 19, 2024). In contrast, were this instead solely a motion for summary judgment, no such warning would be necessary because the Court could rely on record evidence to establish the relevant factual details.

But we are in a somewhat odd position here. One party has moved for judgment on the pleadings—a motion that requires review of only the well-pleaded factual allegations. And the other has cross-moved for partial summary judgment—a motion that permits the Court to reference evidence, not just the pleadings. As a result, the two pending motions seemingly require the Court to review two different "records." That said, the Court need not navigate the differing scopes of review because the evidentiary record Plaintiffs have established for their summary judgment motion is severely limited. Other than the documents already properly before the Court at the

2

pleadings stage,[1] there is only one other document in the evidentiary record: Feldkamp's declaration. (Doc. 10-1, #175–77). The Feldkamp Declaration contains assertions that largely track the allegations in the Complaint. (*Compare* Doc. 1, #2–4, *with* Doc. 10-1, #175–77). Because there is no material difference between the two, the Court will largely rely on the Complaint and those documents it references for the case's background. And it will merely note when the parties disagree about certain factual details as necessary. Keep in mind, though (especially because the Court finds the Complaint cannot survive the pleadings stage), that these factual allegations have yet to be proven and may never be.

Up until 2020, Feldkamp owned and operated FEI, a family-run business he founded in 1988. (Doc. 1 ¶¶ 8, 15, #2, 4). Given the key role he played in FEI's operations, Feldkamp insured FEI against any disability he might incur before his retirement so that FEI would have funds that it could use to bridge any transition if he could no longer run the business.[2] (*Id.* ¶ 9, #2–3; Doc. 8-2, #102). Although not clearly stated in the Complaint, it appears that Feldkamp had preexisting paraplegia resulting from a spinal cord injury from his youth—a condition he identified in his

---

[1] The documents the Court may properly review at the pleadings stage include Feldkamp's insurance application, the insurance policy agreement, the attendant policy rider, and the 2020 purchase agreement, because they "are referred to in the pleadings and are integral to the claims," *Lion Fed. Credit Union*, 2024 WL 1704551, at *1 n.2 (cleaned up). (Opp'n, Doc. 11, #197 n.1).

[2] This effectively was a key-man policy—an insurance policy "designed to protect a business from the financial loss resulting from … [an incapacitating injury to] a top executive." *Nationwide Life Ins. Co. v. Keene*, No. 11-124722, 2012 WL 113532, at *3 (E.D. Mich. Jan. 13, 2012); *All Am. Life & Cas. Co. v. Oceanic Trade All. Council Int'l, Inc.*, 756 F.2d 474, 476 (6th Cir. 1985) (explaining that key-man policies are "designed to [create benefits that] reflect the calculated worth of [a key man] to [his company]").

3

policy application—and that this condition is what prompted him to apply for the insurance. (*See* Doc. 1 ¶ 10, #3; Doc. 1-1, #22). The relevant policy has an effective date of January 8, 2004—though the date of issuance (i.e., date of formation) is not clearly established. (Doc. 1, ¶¶ 11–12, #3; Doc. 1-1, #10–13 (listing the date of issuance as January 8, 2004); *but see* Doc. 8-2, #94–99 (listing the policy's date of issuance as December 13, 2004, and its effective date as January 8, 2004)).

Under the policy, MMLI agreed to pay a lump-sum benefit of $675,000 to FEI upon the occurrence of Feldkamp's "Total Disability," so long as he was still an owner of the business and was actively employed (i.e., had been working on average 30 hours a week) when the disability struck. (Doc. 1-1, #24; Doc. 8-2, #100, 102). The policy defined "Total Disability" as Feldkamp's being incapable of carrying out the main duties of his work, being physically absent from the workplace, and living "under a Doctor's Care" (i.e., Feldkamp's "receiving care by a Doctor that, under prevailing medical standards, is appropriate for the condition causing the Disability"). (Doc. 1-1, #24; Doc. 8-2, #100–02). And even in the event of Feldkamp's Total Disability, benefits would not accrue under the policy unless and until he was disabled for the full two-year "Waiting Period." (Doc. 1-1, #24; Doc. 8-2, #102).

During this Waiting Period, the policy imposed two distinct requirements on Plaintiffs for them to receive benefits for any potential claim. The first took the form of a notice provision, which required Plaintiffs simply to provide MMLI with written notice "that [Feldkamp] is Disabled and that a claim may be made under th[e] Policy." (Doc. 8-2, #106). According to the policy, Plaintiffs were to provide this notice "within

4

20 days after a period of Disability begins, or as soon afterwards as it is reasonably possible to do so." (*Id.*). And, if Plaintiffs elected to move forward with a claim, the second, separate proof-of-claim provision required Plaintiffs to provide MMLI with evidence substantiating that they were entitled to do so, which in turn authorized MMLI to investigate further if it wished. (*Id.*; *see id.* at #107 (authorizing MMLI to seek additional proof of Feldkamp's continuing disability following the submission of the initial proof of claim)). To satisfy this proof-of-claim requirement, Plaintiffs had to submit written "proof … that: [Feldkamp] is Disabled; … continues to have an ownership's share of [FEI]; and [that] … [FEI and Feldkamp still had an agreement in force authorizing FEI and its successors or assigns to] purchase [Feldkamp's] share of [FEI]." (*Id.* at #99, 106). Such initial proof of a potential claim under the policy needed to be submitted within 90 days of the onset of disability (with the possibility of up to a one-year extension of this deadline). (*Id.* at #106). So putting the two provisions together, Feldkamp and FEI first had to contact MMLI upon the onset of Feldkamp's disability to put the potential claim on MMLI's radar; and they then had to submit documentation supporting the potential claim shortly thereafter to provide initial proof of their entitlement to benefits. *See infra* note 5.

    MMLI also issued a policy rider, likewise dated January 8, 2004, which expressly excluded several listed disabilities from the policy's coverage. (Doc. 1-1, #15). Feldkamp did not sign the rider until April 5, 2004. (Doc. 1 ¶ 12, #3; Doc. 1-1, #27). He declares that this rider was sent after the policy was issued—a point MMLI disputes. (*Compare* Doc. 10-1, #176, *with* Doc. 13, #223–24 (citing Doc. 8-2, #97, 121)).

5

He also alleges he signed this rider only because MMLI told him that the disability policy would be rescinded without the rider based on its determination that he had not properly disclosed his paraplegia in his insurance application. (Doc. 1 ¶ 13, #3).

Plaintiffs allege the required premiums were paid for sixteen years, until the summer of 2020, when Feldkamp needed to step back from working at FEI. (*Id.* ¶ 14, #3–4). Because of concerns about depression and anxiety, Feldkamp's doctor advised him in the "spring or early summer of 2020" to stop working. (*Id.*). Neither the Complaint nor Feldkamp's declaration suggests whether he heeded that advice immediately following his receipt of it. (*See* Doc. 10-1, #176–77). That said, Feldkamp did take steps in that direction that reasonably suggest he discontinued his work for FEI. First, Feldkamp sold his brother his ownership interest in FEI, effective June 30, 2020. (Doc. 1 ¶ 15, #4). According to the buyout agreement, the transfer of ownership was "[d]ue to [Feldkamp]'s serious condition"—identified as Feldkamp's being "totally disabled"—as well as "the substantial unlikelihood of [his] ever recovering or being able to return to work." (Doc. 8-3, #134). And on September 1, 2020, Feldkamp formally stopped all work at FEI. (Doc. 1 ¶ 16, #4). Plaintiffs fail to allege whether they complied with the policy's notice or proof-of-claim provisions. (Doc. 11, #207 (admitting that "the pleadings lack *any details* regarding whether Plaintiffs submitted particular claim materials (including any notice or proof of claim)" (emphasis added))). But they do allege that FEI made a claim under the policy after the two-year Waiting Period expired. (Doc. 1 ¶ 17, #4). MMLI denied the claim—

6

allegedly due to its determination that an exclusion in the policy rider barred payment of insurance benefits to FEI. (*Id.* ¶ 18, #4; Doc. 5, #41).

So Feldkamp and FEI sued MMLI on June 28, 2023, invoking this Court's diversity jurisdiction. (Doc. 1, #1–2). In their Complaint, Plaintiffs raised three claims for relief: breach of contract, bad faith and fraud in the inducement, and declaratory judgment. (*Id.* at #5–8). To support these claims for relief, Plaintiffs allege that (1) MMLI's denial of coverage was due to an unenforceable policy rider; (2) in the alternative, MMLI in bad faith and fraudulently induced Feldkamp to sign the policy rider, which MMLI used to deny coverage; and (3) they are entitled to declaratory judgment to that effect. (*Id.*). MMLI answered denying Plaintiffs' allegations. (Doc. 5).

Before the Court held the required preliminary conference to discuss the parties' Rule 26(f) report, the parties jointly requested that it vacate the conference and set a dispositive motions deadline for November 21, 2023. (8/23/23 Not. Order). Consonant with that jointly requested deadline, the parties filed cross motions.

MMLI moved for judgment on the pleadings. (Doc. 9). It contends that the only plausible reading of the Complaint compels a conclusion that Feldkamp's sale of his ownership interest in FEI occurred before he suffered a Total Disability, which means the policy terminated before MMLI's obligation to pay disability benefits was triggered. (Doc. 9-1, #155–57). MMLI further argues that Feldkamp's breach-of-contract claim fails because Plaintiffs did not satisfy the conditions precedent in the policy requiring that they provide notice and a written proof of claim to MMLI shortly

7

after the onset of Feldkamp's disability. (*Id.* at #156–57; Reply, Doc. 18, #283–85). As a result, MMLI contends that because the Complaint fails to state a claim for relief for breach of contract, Plaintiffs' other claims related to the policy rider are rendered moot. (Doc. 9-1, #157–58).

Plaintiffs, by contrast, moved for partial summary judgment. (Doc. 10). More specifically, they seek an entry of judgment on their breach-of-contract claim and certain aspects of their declaratory judgment claim contending that there is no genuine issue of material fact as to the factual basis underlying those claims. (Doc. 10, #163). (Of course, no discovery has occurred, which makes it hard for there to be an evidentiary dispute.)

Both parties opposed each other's motion. (Docs. 11, 14). And each then filed their respective replies. (Docs. 15, 18). So both motions are ripe for review.

## LEGAL STANDARD

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6)." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 828 (S.D. Ohio 2020). Under that standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bullington v. Bedford Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up). To make that determination, the Court must "construe the [] complaint in the light most favorable to the[] [Plaintiff], and accept the complaint's allegations as true, drawing all reasonable inferences in favor of the Plaintiff[]." *Coley v. Lucas Cnty.*, 799 F.3d

8

530, 537 (6th Cir. 2015). And "when a court analyzes a motion for judgment on the pleadings, it generally must confine its review to the pleadings." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024). That said, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335– 36 (6th Cir. 2007); *see also* Fed. R. Civ. P. 10(c). "These written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is based." *Anderson*, 2024 WL 51255, at *9 (cleaned up). For that reason, they "often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Id.* (citation omitted).

Separately, a court may grant a motion for summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, Plaintiffs, the moving parties, bear the ultimate burden of proof at trial. So they must show that the undisputed material facts entitle them to judgment as a matter of law—in other words, their evidentiary "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (cleaned up). But as the Sixth Circuit has explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l*

9

*Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)). In sum, the non-moving party, at this stage, must present some "sufficient disagreement" that would warrant submission of the dispute to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

One further wrinkle: "[a] court may rule on a motion for summary judgment *only after* the nonmoving party has had 'adequate time for discovery.'" *E. Ky. Cardiothoracic Surgery, P.S.C. v. Ashland Hosp. Corp.*, 119 F. App'x 715, 717 (6th Cir. 2004) (quoting *Celotex*, 477 U.S. at 322) (emphasis added). Thus, the default rule is that "*some discovery* must be afforded the non-movant before summary judgment is granted." *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994) (emphasis added). Though courts may enter summary judgment without any discovery, that rare scenario exists only when they can "decide claims as a matter of law, or where the facts conceded by the parties in their pleadings are sufficient to decide the matter, [thereby rendering] additional discovery … superfluous." *EBI-Detroit, Inc. v. City of Detroit*, 476 F. Supp. 2d 651, 652 (E.D. Mich. 2007).

## LAW AND ANALYSIS

As noted, there are two pending cross motions. Because a motion for judgment on the pleadings, like MMLI's, depends only on the pleadings and those documents

10

integral to the claims raised, it is logically antecedent to a motion for summary judgment. So the Court begins there. And as MMLI's motion has merit, Plaintiffs' motion is moot.

MMLI's motion for judgment on the pleadings is straightforward. MMLI contends that it owes Feldkamp and FEI no duty under the insurance policy because Feldkamp's sale of his ownership interests in FEI predated his Total Disability (the event triggering MMLI's benefits obligations) and that this sale of ownership interests terminated the policy under the policy's plain language. (Doc. 9-1, #154–55 (citing Doc. 8-2, #95)). In the alternative, it points to Plaintiffs' failure to allege that they complied with the policy's notice and proof-of-claim provisions as obviating MMLI's obligation to pay FEI any benefits. (*Id.* at #156–57; Doc. 18, #283–85). The Court finds the second argument persuasive, especially given that Plaintiffs acknowledge this gap in the pleadings. (Doc. 11, #207).

"The elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Becker v. Direct Energy, LP*, 112 N.E.3d 978, 988 (Ohio Ct. App. 2018) (cleaned up).[3] To establish performance under the contract, Plaintiffs must plausibly

---

[3] The parties both assume Ohio contract law applies to the insurance policy at issue without engaging in a conflict-of-law analysis. (*E.g.*, Doc. 9-1, #155; Doc. 11, #207–08). The policy does not appear to contain an express choice as to the governing law. But the Court notes, on first blush, that Ohio law appears to govern the agreement under the Ohio conflict-of-law rules that apply because Ohio appears to have the most significant connection to the insurance contract at issue here. *Shanghai Weston Trading Co. v. Tedia Co.*, No. 1:23-cv-117, 2023 WL 8787235, at *3 n.5 (S.D. Ohio Dec. 19, 2023). Namely, Feldkamp and FEI are both citizens of Ohio, (Doc. 1 ¶¶ 3–4, #2), Ohio is where the benefit of the insurance contract was expected to be felt, (*id.* ¶¶ 19–20, #4), and the policy itself contains several references to Ohio law

allege that they complied with all conditions precedent, given "it is well established under Ohio contract law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach." *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985) (citing *Bell Brothers v. Robinson*, 5 Ohio App. 454, 458 (Ohio Ct. App. 1916)).

This rule applies here because there are notice and proof-of claim provisions in the policy at issue and "[n]otice provisions in insurance contracts are conditions precedent to coverage." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 842 (Ohio 2002). Hence, "an insured's failure to give its insurer notice in a timely fashion bars coverage." *Id.* Per the policy's terms, Plaintiffs had to notify MMLI of a potential claim within 20 days of the onset of Feldkamp's Total Disability (or as soon as reasonably possible after that date). (Doc. 8-2, #106). And Plaintiffs also needed to provide initial proof of the claim—that is to say, actual evidence that Feldkamp stopped working and could not return to work—within 90 days. (*Id.*). But a review of the Complaint shows that no allegation establishes whether or not Plaintiffs complied with either requirement. In fact, Plaintiffs admit as much: "the pleadings lack any details regarding whether Plaintiffs submitted … any notice or proof of claim." (Doc. 11, #207). In other words, they acknowledge that they have not pleaded any factual allegations that they performed either of two required conditions

---

suggesting that the parties intended Ohio law to govern their agreement, (Doc. 8-2, #109 (noting that the policy will conform to the laws of the state "where the Insured resides"); *id.* at #128–29). *See Shanghai Weston*, 2023 WL 8787235, at *3 n.5. So without "delving too deeply into" the issue, given no party suggested any other state's law should apply, the Court follows suit and applies Ohio law to the policy here. *Id.* (cleaned up).

12

precedent to the accrual of MMLI's obligation to pay out under the policy. *See Goodyear*, 769 N.E.2d at 842. And without creating any plausible factual basis for establishing that one of the elements of their breach-of-contract claim is met, Plaintiffs cannot establish a valid claim for relief. *Dawson v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:22-cv-776, 2024 WL 22735, at *5 (S.D. Ohio Jan. 2, 2024) ("[Plaintiffs] must plausibly allege that *each* element of their claim has been met—including that the defendant (Allstate) breached the contract. And to show a breach, a plaintiff must … show the defendant had a duty under the contract[] … [and] failed to perform that duty *after it became due*." (citations omitted)). As a result, the Court must dismiss Plaintiffs' breach-of-contract claim. But given Plaintiffs could theoretically add factual allegations to their Complaint showing that they complied with these provisions, the dismissal will be without prejudice.[4]

Plaintiffs object by suggesting that this argument turns on "undeveloped issues of fact that are not [to be] resolved by the pleadings." (Doc. 11, #207). According

---

[4] MMLI contends that no such allegations could be added because they would lack a grounding in reality. In other words, MMLI claims that Plaintiffs never submitted notice or a proof of claim, so Plaintiffs would not have a good-faith basis for including such allegations in an amended complaint. (Doc. 9, #158–59; *see generally* Doc. 18). But these assertions relate to factual details beyond the pleadings—the Court cannot take MMLI's assertion about the state of the world at face value without (improperly) looking outside the Complaint and any document integral to the claims raised. Nor, contrary to MMLI's suggestion, (Doc. 18, #282 n.5), can the Court consider the claims form FEI sent to MMLI in 2022 to verify any of MMLI's extra-pleadings arguments. The Complaint contains no references to the specific form FEI used to submit its claim under the policy, and the details in that form do not provide the factual basis for any of the claims raised. Besides, even were the form integral to the Complaint, MMLI cannot add such a document to the record through a reply brief as doing so forecloses any opportunity for Plaintiffs to respond. *Morse v. Fifty W. Brewing Co.*, No. 1:21-cv-377, 2024 WL 1151794, at *4 (S.D. Ohio Mar. 18, 2024). The Court therefore declines to credit MMLI's representations or its extra-pleadings evidence and adheres to its determination that the dismissal should be without prejudice.

to Plaintiffs, they adequately alleged their performance under the policy, (*id.* (citing only paragraph twenty-three of the Complaint, (Doc. 1 ¶ 23, #5))), and that because they did so, there is a factual dispute about whether any alleged failure to provide notice and to submit an initial proof of the claim within the required timeframes prejudiced MMLI, (*id.* at #208–09). But, as noted above, Plaintiffs also admit in that exact same breath that "the pleadings lack any details regarding whether Plaintiffs submitted … any notice or proof of claim." (*Id.* at #207). This concession dooms Plaintiffs' arguments against dismissal. If there are *no* non-conclusory allegations about whether Plaintiffs complied with the notice provisions in the policy, as is readily apparent from the Complaint and as Plaintiffs admit, then there can be no basis for concluding that Plaintiffs adequately performed under the policy. So Plaintiffs have not alleged any facts plausibly showing that MMLI's obligation to pay FEI ever arose. Yes, Plaintiffs allege in a conclusory fashion that they "adequately performed under the Policy." (Doc. 1 ¶ 23, #5). But conclusions are not facts, and Plaintiffs provide *zero* well-pleaded factual allegations about their performance with respect to the *notice* provisions. (*Id.* (alleging only that Plaintiffs paid the premiums and requested payment under the insurance policy at the end of the Waiting Period)). Merely including conclusory allegations that track the elements of the breach-of-contract claim does not suffice to state a claim for relief under federal pleading standards. *Iqbal*, 556 U.S. at 678. This factual gap in the Complaint therefore renders this breach-of-contract claim facially deficient.

And while Plaintiffs are generally correct that MMLI must have suffered prejudice from the lack of notice before Plaintiffs' failure to provide it can excuse MMLI's obligations to pay out under the policy, *see Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 947 (Ohio 2002), this rule cannot save Plaintiffs' claim on the facts alleged here. Under Ohio law, "prejudice to the insurer is presumed from unreasonable delay in giving the required notice of loss under the policy, and the burden rests upon the claimant to show absence of prejudice." *W. Am. Ins. Co. v. Hardin*, 571 N.E.2d 449, 452 (Ohio Ct. App. 1989); *accord Helman v. Hartford Fire Ins. Co.*, 664 N.E.2d 991, 995–96 (Ohio Ct. App. 1995). Here, no allegations suggest that notice was *ever* given. Plaintiffs cannot try to save their pleading deficiency by putting the onus on MMLI to prove a lack of prejudice. They failed in the first instance to allege whether they have complied with all material provisions of the contract. It makes no sense to ask whether the insurer was prejudiced without first having a reasonable basis to conclude from the factual allegations that Plaintiffs notified MMLI of the potential claim. That would be the legal equivalent of putting the cart before the horse.

Even liberally construing the Complaint as alleging that FEI's submission of a claim, which occurred two years after the onset of Feldkamp's disability, (Doc. 1 ¶ 17, #4), provided the information needed to satisfy the two notice requirements—and assuming for current purposes that such a late submission could validly satisfy those provisions—that delay is clearly unreasonable and certainly seems prejudicial to MMLI. FEI's alleged claim submission came nearly a year after the last date allowed

15

under the policy for Plaintiffs' submission of their initial proof of claim. (Doc. 1 ¶¶ 14, 17, #3–4 (alleging Plaintiffs waited until after the 730-day Waiting Period expired to file a claim under the policy); Doc. 8-2, #106 (permitting a one-year extension of the 90-day deadline for Plaintiffs to submit a proof of their claim under the policy after the onset of Feldkamp's disability)). In context, such a delay is substantial given the purpose that insurance contracts' notice provisions typically serve: protecting an insurer's contractual rights by "allow[ing] the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate," *Ferrando*, 781 N.E.2d at 944 (citation omitted). *See Helman*, 664 N.E.2d at 995 (concluding a two-year delay in providing written notice of a potential claim in accordance with the insurance policy's terms constituted an unreasonable delay, even though the insured provided oral notice shortly after it became aware of a potential claim).

And because FEI is entitled to benefits under the policy *only if* Feldkamp is Totally Disabled for the entirety of an uninterrupted period of two years, (Doc. 8-2, #102), failing to notify MMLI of a potential claim until after that period had run severely limits MMLI's ability to verify that benefits are owed. At a minimum, this delay certainly runs the risk that relevant evidence will have been lost. *Cf. Ferrando*, 781 N.E.2d at 944 (Notice "allows insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims." (citation omitted)). Indeed, such a delay largely renders valueless MMLI's ability to investigate Plaintiffs' claim. Had Plaintiffs provided the required notices, MMLI could have sought substantiation throughout the Waiting Period to

16

assist in its investigation of a claim. An after the fact assessment of evidence is no substitute for MMLI's ability to guarantee in real time during the Waiting Period whether Feldkamp's totally disabling condition existed and continued unabated.[5]

As a result, the potential prejudice to MMLI caused by Plaintiffs' delay (again, assuming FEI's later submission of a claim sufficed to provide MMLI the information mandated for the contractually required notice) seems clear. Without any explanation from Plaintiffs as to why this delay would not be prejudicial—which is their burden to show—they cannot demonstrate they performed under the contract and therefore cannot establish all elements of their breach-of-contract claim. *Fusselman v. Westfield Ins. Co.*, 2003-Ohio-5467, ¶ 10 (9th Dist.) (citing *Ferrando*, 781 N.E.2d at 947). The breach-of-contract claim must be dismissed.[6]

---

[5] Because MMLI reasonably would need a means by which it could evaluate Feldkamp's medical condition during the Waiting Period to protect its interests, the Court rejects out of hand Plaintiffs' suggestion that the notice, proof-of-claim and waiting-period provisions in the policy are ambiguous. (*See* Doc. 11, #210). The policy makes clear MMLI intended to cover only permanent disabilities. (Doc. 8-2, #101–02). And one way to evaluate whether a condition is permanent is to see if the condition exists for some extended time without interruption. Thus, the Waiting Period is the mechanism by which MMLI ensures that Feldkamp is in fact Totally Disabled. But, as noted above, MMLI also has an interest in not paying for fraudulent claims, which requires that it be able to investigate whether such a disability lasts that long. Therefore, the self-evident purpose of the notice and proof-of-claim provisions was to put Feldkamp's disability on MMLI's radar to enable it to test that disabling condition during the two-year period before benefits fully accrued. Thus, there is no conflict or ambiguity in the contract between the Waiting Period provisions and the notice provisions. One defines a means to ensure the disability is permanent; the other allows the insurer to have access to evidence during that period to investigate the claim.

[6] Because Plaintiffs' failure to allege any factual details about their provision of notice dooms the breach-of-contract claim, the Court does not opine on MMLI's contention that Feldkamp became Totally Disabled only after he sold his interests in FEI to his brother. (Doc. 9-1, #155–56). Nor should the Court be understood as reaching MMLI's other arguments about the proper construction of the term "Actively Employed," (Doc. 18, #281 n.4), or whether Plaintiffs could ever properly plead that they complied with the policy's notice and proof-of-claim provisions, *see supra* note 4. Simply, Plaintiffs have omitted factual allegations about notice

\* \* \*

That brings us to MMLI's argument that the rest of the claims must be dismissed as moot. Federal courts may not adjudicate claims that do not implicate "[a]n actual, ongoing controversy." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557–58 (6th Cir. 2021). For such a controversy to exist, "the relief requested [must] have a real impact on the legal interests of th[e] parties." *Id.* at 558 (citation omitted). But if "the parties [no longer retain] a legally cognizable interest in the outcome" of the suit, the case is moot, and the claims must be dismissed. *Id.* (citation omitted). Here, as MMLI rightfully points out, the dismissal of Plaintiffs' breach-of-contract claim spells the end of the parties' interest in the Court's adjudication of the other claims raised. Plaintiffs' two other claims either duplicate their allegations that MMLI breached the insurance contract by failing to pay out under the policy or assert that MMLI's basis for refusing to pay cannot stand because MMLI purportedly fraudulently induced Feldkamp to sign the policy rider, which renders it unenforceable. (Doc. 1, #6–8). But Plaintiffs do not allege that there are harms attributable to those claims that are independent of MMLI's alleged breach of the contract when it failed to pay FEI any insurance proceeds. *See Gen. Elec. Med. Sys. Eur., Inc. v. Prometheus Health Imaging, Inc.*, 205 F. App'x 418, 421 (6th Cir. 2006) ("Because GEMS sought the same remedy we affirm herein through its claims for alter ego/breach of contract and conversion, those issues are moot.").

---

necessary to make out an essential element of their breach-of-contract claim: that they performed under the contract. That failing is the sole basis for the dismissal here.

So once the breach-of-contract claim falls, the others must also fail as Plaintiffs do not hold any continuing legal interest in the Court's resolution of those claims. (A contrary ruling would require the Court give an advisory opinion on the enforceability of a policy rider without any affect on the parties' legal interests given MMLI owed Plaintiffs no duty to pay out benefits under the policy in the first place.) And given Plaintiffs do not argue otherwise, (Doc. 11, #210 (contending only that the Court need not reach the mootness issue were it to find the breach-of-contract claim survives dismissal)), the remaining two claims will also be dismissed without prejudice.

## CONCLUSION

As detailed above, Plaintiffs have not sufficiently pleaded their breach-of-contract claim because they have not established that they complied with all conditions precedent. As a result, that claim fails, which thereby moots Plaintiffs' overlapping bad faith and declaratory judgment claims. So dismissal of the entire Complaint is warranted.[7] But Plaintiffs theoretically could amend the Complaint to cure this defect, which means the dismissal will be without prejudice. The Court therefore **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Judgment on the Pleadings (Doc. 9) and **DISMISSES** Plaintiffs' action **WITHOUT PREJUDICE**. And because the action is dismissed in toto, the Court **DENIES AS MOOT** Plaintiffs' Motion for Partial Summary Judgment (Doc. 10). The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

---

[7] And as this resolution follows plainly from a straightforward review of the Complaint and plain language of the policy, the Court denies Plaintiffs' request for oral argument on the motions. (Doc. 11, #211; Doc. 15, #252–53).

**SO ORDERED.**

May 1, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

20